## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VIRGINIA RUSSELL,** | : | **Civil No. 4:24-CV-0350** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **LELAND DUDEK,** | : | |
| **Acting Commissioner of Social Security,[1]** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

In the face of significant personal challenges, Virginia Russell has undertaken a daunting legal challenge. She has represented herself in her disability hearing before the Administrative Law Judge (ALJ), and now on appeal. Thus, she has endeavored to navigate a complex medical, legal, and administrative landscape with no attorney and few legal cairns to guide her. Moreover, she has embarked upon this

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for the previously named defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

complex task despite the fact that she has suffered multiple prior traumatic brain injuries which have left her with a full scale IQ of 89. (Tr. 389).

On appeal, Russell advances a single, simple argument rooted in her own commonsense understanding of the requirements of the workplace. Russell, who suffers from irritable bowel syndrome (IBS), graphically describes her own workplace experience with fecal incontinence and asserts that the sudden onset of these symptoms leaves her frequently off task and unemployable. (Doc. 14). According to Russell, the ALJ erred in failing to consider her IBS when assessing her disability claim.

Liberally construed, Russell's appeal calls to mind a familiar guiding tenet of the law in this field. While Social Security appeals are judged against a deferential substantive standard of review, case law imposes a clear obligation upon Administrative Law Judges (ALJs) to fully articulate their rationale when denying benefits to disability applicants. This duty of articulation is essential to informed judicial review of agency decision-making since, in the absence of a well-articulated rationale for an ALJ's decision, it is impossible to ascertain whether substantial evidence supported that decision. At a minimum, this duty of articulation requires the ALJ to draw a legal and logical bridge between any factual findings and the final conclusion denying the disability claim.

The instant case illustrates the importance of this logical bridge, providing "a clear and satisfactory explication," Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), of the basis for the limitations that are revealed by substantial medical evidence. At a minimum, this duty of articulation means that the ALJ's decision must be grounded in medical and economic realities. In this case, the ALJ's decision fails to even acknowledge Russell's IBS symptoms as an impairment at Step 2 of this sequential analysis despite ample evidence identifying this condition as a medically determinable impairment. The ALJ then adopts a residual functional capacity assessment for Russell which makes no provision for off task time and discounts the severity of her IBS symptoms in a single sentence.

Upon consideration, we find that the ALJ failed to adequately account for the plaintiff's fecal incontinence related to her IBS and provided no explanation for the omission of such off-task limitations in the RFC. Thus, in the instant case, we conclude that the ALJ's burden of articulation has not been met. Accordingly, we will remand this case for further consideration and evaluation by the Commissioner.

## II.    Statement of Facts and of the Case

### A. Russell's IBS

On June 15, 2021, Virginia Russell filed an application for supplemental security income, alleging disability beginning June 1, 2021. (Tr. 11). While Russell

cited to a number of physical and emotional impairments in her disability application, in this appeal she focuses exclusively upon her IBS and the stress-related urinary and fecal incontinence she experienced as a result of these medical conditions.

With respect to these medical impairments, it is clear from the outset of the administrative process that Russell, who was proceeding *pro se*, was asserting that these incontinence issues rendered her unemployable as a practical matter. Thus, in her August 20, 2021, function report Russell stated that she was unable to complete a work shift with an allotted number of bathroom breaks due to these impairments and her fecal incontinence. (Tr. 180). Russell described her symptoms as including explosive diarrhea and claimed disability, in part, due to her IBS. (Tr. 180, 185). As she further explained in a March 2022 disability report:

> My stomach issues are worse due to my PTSD symptoms increasing. I go days without defecating and then spend two days with violent diarrhea. Nothing anyone can prescribe can reduce my anxiety and posttraumatic stress therefore I just have to live with the symptoms. Unfortunately, my symptoms are so severe that I am not able to operate within normal parameters of bathroom breaks as designated by an employer.

(Tr. 207).

Russell also emphasized that she had medical support for this claim, stating: "I have letters from my doctor stating I am to be given unlimited bathroom breaks

as my brain cannot regulate my bodily functions normally with the stress of employment." (Tr. 209).

Russell's statements regarding the severity of her IBS symptoms were confirmed by an independent source, Darnethia Cunningham, a mental health caseworker who worked with the plaintiff. In her August 16, 2021, third party report, Ms. Cunningham explained that Russell's IBS impaired her ability to work because workplace stress triggered this condition and decreased "her ability to control her bodily functions." (Tr. 192). Cunningham provided illustrations regarding how the IBS flare ups limited Russell's activities explaining that toileting was difficult for the plaintiff, and she needed to often have a bathroom nearby so she could run to the facilities at a moment's notice. (Tr. 193, 196).

The clinical evidence, while equivocal in some respects, confirmed that Russell has long suffered from IBS, an impairment which was stress related and fluctuated in its severity. Indeed, the clinical record is replete with references to this IBS diagnosis.[2]  These medical records described Russell's IBS as a longstanding and chronic condition which had been diagnosed since 2010. (Tr. 359, 369). The medical records also acknowledged that her symptoms fluctuated between episodes

---

[2] See, e.g., Tr. 243, 250, 251-52, 260, 264, 269, 273, 287, 297, 306, 310, 317-18, 328, 337, 359, 405, 430, 439-39, 450, 457, 464, 479, 513, 522, 525, 549, 550, 564-5, 573, 584-87.

of constipation and diarrhea, (Tr. 439), and her longitudinal treatment history confirmed the fluctuating nature of these symptoms, with Russell reporting both instances of relatively benign symptoms, (Tr. 260, 297, 308, 525, 549, 552, 573), as well as episodes of significant urinary and fecal incontinence. (Tr. 243, 251-52, 310, 437-38, 513, 584-87).

Despite this clinical evidence confirming Russell's longstanding and chronic IBS, the medical opinion evidence shows that this impairment was largely ignored by the medical sources who opined on Russell's ability to meet the demands of the workplace. Thus, the two state agency experts who initially examined Russell's physical impairments, Dr. Parmalee and Dr. Park, do not clearly identify her IBS as a medically determinable impairment, and make no provision for that condition in their analysis of her ability to remain on task. (Tr. 55-68). Likewise, the consulting examining source in this case who considered Russell's physical limitations, C.R.N.P. Karena Hammon, noted Russell's history of IBS for many years, but failed to diagnose her as suffering from IBS, and further failed to include any off task assessment relating to this medical condition. (Tr. 405-17).

It was against this clinical backdrop, which confirmed that one of Russell's medically determinable impairments was IBS, that this disability claim was heard by the ALJ.

6

## B. <u>**The ALJ Hearing and Decision**</u>

On October 19, 2022, an ALJ conducted a hearing regarding Russell's disability claim. (Tr. 29-48). Russell represented herself at this administrative hearing and early on in these proceedings there were indications that this task was overwhelming for Russell, who it is undisputed had suffered multiple traumatic brain injuries in the past. When the ALJ questioned Russell regarding gaps in the clinical records which she had submitted, she broke down crying and stated that she was experiencing a panic attack. (Tr. 33). Russell also clearly explained that her IBS was one of a constellation of impairments which left her disabled, stating that she was compelled to wear diapers, had a physician's note that recommended that she receive unlimited bathroom breaks,[3] and could not meet workplace tolerances for off task time due to her stress-related urinary or fecal urgency. (Tr. 43). Thus, the issue of the impact of Russell's IBS on her ability to work was squarely before the ALJ at this hearing.

---

[3] This doctor's letter does not appear in the administrative record, but Russell has attached what purports to be a letter from her treating nurse practitioner to her brief. That letter indicates that Russell requires frequent bathroom breaks due to her ongoing GI issues. (Doc. 14-1). Russell's inability to ensure that this information became part of the administrative record highlights the challenges which this mentally impaired claimant faced when proceeding as her own counsel in this case.

A vocational expert also testified at this hearing in a fashion which called for some consideration of the potentially disabling impact of Russell's IBS. In response to Russell's request that the expert address how frequent unscheduled bathroom breaks would affect her employability, when asked if a person who required unlimited bathroom breaks could be employed, the expert testified: "Oh no, certainly not." (Tr. 46).

Following this hearing, the ALJ issued a decision denying the plaintiff's disability application on April 13, 2023. (Tr. 8-23). In that decision, the ALJ first concluded that the plaintiff had not engaged in substantial gainful activity since June 15, 2021, the application date. (Tr. 13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that the plaintiff suffered from the following severe impairments: degenerative disc disease, migraine headaches, obesity, panic disorder, post-traumatic stress disorder (PTSD), depressive disorder, generalized anxiety disorder, attention deficit—hyperactivity disorder (ADHD), and neurocognitive disorder. (Id.) However, significantly, the ALJ made no mention whatsoever of Russell's IBS. Thus, the decision does not acknowledge this impairment at Step 2 or consider its severity despite the evidence of its longstanding and potentially significant impact upon the plaintiff's ability to work.

At Step 3 the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 14-16).

The ALJ then fashioned the following RFC for the plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with occasional climbing ladders, ropes, or scaffolds and crawling while avoiding concentrated exposure to temperature extremes, humidity, noise, vibration, fumes, odors, dust, gases, poor ventilation, dangerous machinery, and unprotected heights. Further, work is limited to simple and routine tasks involving only simple, work-related decisions and with few, if any, workplace changes. She cannot perform production pace work and can tolerate only occasional interaction with supervisors, coworkers, and the public.

(Tr. 16).

Notably, this RFC made no accommodations for the plaintiff's IBS or for her frequent and unpredictable stress related urinary and fecal incontinence, despite having been informed by the vocational expert that these conditions could potentially preclude employment. Instead, the ALJ disposed of these impairments, which had not been considered at Step 2, in a summary fashion, stating:

> The claimant reported that she was doing well and did not report having repeated panic attacks with severe symptoms, such as bowel incontinence. She reported experiencing one bowel movement per day (Exhibits C4F/2-6, 21-23, 27-29, and 36-40, C7F/10, 14-15, 19, 34-35, and 48-49, C8F, C9F, and C10F/4-6, 13-19, 51-55, 60-61, 65-70, 76-78, and 80-81).

9

(Tr. 18).

This cursory treatment of Russell's IBS symptoms was problematic on several scores. First, for the most part, the record citations listed by the ALJ reflected psychiatric behavioral health encounters rather than physical examinations. Thus, they shed only limited light on Russell's physical impairments. Second, this brief assessment failed to take into account the fact that Russell's symptoms fluctuated, a fact noted by her treating sources. Further, the ALJ's decision neglected to mention those instances in which treatment records recorded IBS fecal and urinary incontinence flare ups.

Nonetheless, based upon this RFC determination, which failed to consider or address Russell's IBS, the ALJ determined that there were jobs the plaintiff could perform in the national economy and denied her disability claim. (Tr. 21-23).

This appeal followed. (Doc. 1). On appeal, the plaintiff's sole argument is that the ALJ failed to account for the total limiting effects of her symptoms in failing to address the off-task time resulting from her IBS symptoms. Upon consideration, we find that the ALJ's failure to address or account for this medically determinable condition in the RFC was error. Therefore, we will remand this case for further consideration and evaluation of the evidence.

III.    **Discussion**

A.    **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

12

a lack of substantial evidence.") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable

13

meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
particular "magic" words: "Burnett does not require the ALJ to use
particular language or adhere to a particular format in conducting his
analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a

claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C.

§1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this

requirement, a claimant must have a severe physical or mental impairment that

makes it impossible to do his or her previous work or any other substantial gainful

activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C.

§1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).  To receive benefits under

14

Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable

impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

16

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

17

the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

18

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

It is against these legal benchmarks that we assess the instant appeal.

## C.    <u>This Case Should Be Remanded.</u>

In our view, the ALJ erred at Step 2 of this analysis by failing to acknowledge, analyze, or address Russell's IBS when assessing her disability claim. The ALJ then failed to cure this oversight at subsequent steps in this disability analysis, an oversight which now compels a remand.

19

Turning first to the Step 2 analysis of Russell's disability claim, Step 2 is often

the first substantive benchmark an ALJ must address and is governed by familiar

legal standards:

> With respect to this threshold showing of a severe impairment, the
> showing required by law has been aptly described in the following
> terms: "In order to meet the step two severity test, an impairment need
> only cause a slight abnormality that has no more than a minimal effect
> on the ability to do basic work activities. 20 C.F.R. §§ 404.1521,
> 416.921; S.S.R. 96–3p, 85–28. The Third Circuit Court of Appeals has
> held that the step two severity inquiry is a *'de minimus* screening device
> to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec.,370
> F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec., 347 F.3d
> 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been
> made is to be resolved in favor of the applicant.' Id." Velazquez v.
> Astrue, No. 07–5343, 2008 WL 4589831, *3 (E.D.Pa., Oct.15, 2008).
> Thus, "[t]he claimant's burden at step two is 'not an exacting one.'
> McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004). This
> step should be 'rarely utilized' to deny benefits. Id. at 361. Rather, ...
> [a]n individual should be denied benefits at step two only if the
> impairment he presents is a 'slight abnormality' that has 'no more than
> a minimal effect on [his] ability to work.' Id." Kinney v. Comm'r of
> Soc. Sec., 244 F. App'x 467, 469–70 (3d Cir.2007). Accordingly, "[d]ue
> to this limited function, the Commissioner's determination to deny an
> applicant's request for benefits at step two should be reviewed with
> close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d 357,
> 360 (3d Cir.2004).

Dotzel v. Astrue, No. 1:12-CV-1281, 2014 WL 1612508, at *4 (M.D. Pa. Apr. 22,

2014). Furthermore,

> > [E]ven if an ALJ erroneously determines at step two that
> > one impairment is not "severe," the ALJ's ultimate
> > decision may still be based on substantial evidence if the
> > ALJ considered the effects of that impairment at steps

20

three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. See Nosse v. Astrue, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D.Pa. Sept.17, 2009).

McClease v. Comm. of Soc. Sec., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); see also Salles v. Comm. of Soc. Sec., 229 Fed. App'x 140, 145, n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

Stouchko v. Comm'r of Soc. Sec., No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014).

In the instant case, the ALJ's Step 2 analysis of Russell's IBS is undeniably flawed. That condition, and its symptoms of incontinence, are thoroughly documented in Russell's clinical record and medically determinable. Yet, the ALJ's decision does not even acknowledge the existence of these conditions and impairments at Step 2, let alone assess their severity. This was error. At a minimum, the ALJ needed at Step 2 to acknowledge and assess these well-documented impairments.

Nor can we treat this error as harmless in the facts of this case. In this regard "we apply harmless error analysis cautiously in the administrative review setting." Fischer–Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). Thus:

> In Social Security appeals courts may apply harmless error analysis when assessing the sufficiency of an ALJ's decision. <u>Seaman v. Soc. Sec. Admin.</u>, 321 Fed.Appx. 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings.'" <u>Hyer v. Colvin</u>, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

<u>Harrison v. Berryhill</u>, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), <u>report and recommendation adopted,</u> No. 3:17-CV-0618, 2018 WL 2049924 (M.D. Pa. May 2, 2018).

Here we find that the ALJ's error may have prejudiced consideration of Russell's case. The ALJ's omission of any meaningful discussion regarding off-task time or absenteeism related to the plaintiff's IBS and restroom needs deprives the Court of the ability to conduct meaningful review, since we are without answers as to the ALJ's reasoning for failing to identify IBS as an impairment at Step 2 and failing to include any off-task time in the RFC assessment. Our view is supported by many other courts who have found that remand is necessary when an ALJ fails to include appropriate restrictions in a claimant's RFC where the evidence demonstrates a need for frequent restroom breaks. <u>See Dowling v. Comm'r of Soc. Sec. Admin.</u>, 986 F.3d 377, 389 (4th Cir. 2021) ("Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work. And yet, the ALJ did not analyze Appellant's need for regular bathroom breaks"); <u>Laura J v.</u>

--

O'Malley, No. 7:22-CV-00402, 2024 WL 1954157, at *5 (W.D. Va. Feb. 14, 2024) (remanding where the ALJ failed to engage in "a robust and thorough discussion" of how he arrived at an RFC that allowed for only 5% off-task time to account for the plaintiff's chronic diarrhea); Robinson v. Saul, No. CV22001659MBSMGB, 2021 WL 3410544, at *5 (D.S.C. June 11, 2021), report and recommendation adopted, No. 2:20-CV-01659-MBS, 2021 WL 2947732 (D.S.C. July 14, 2021) (finding the court could not perform a meaningful review of the issue where an ALJ did not explain why no off-task time was included for incontinence); Hardin v. Saul, No. CV 19-953, 2020 WL 5593745, at *4 (W.D. Pa. Sept. 18, 2020) (more explanation needed where ALJ included no restrictions in RFC regarding the number and duration of restroom breaks plaintiff may need); Peterson v. Berryhill, 363 F. Supp. 3d 651, 661–62 (D.S.C. 2019) (remanding where the ALJ failed to account for the plaintiff's claims of bathroom usage ten times a day for fifteen to thirty minutes each, despite evidence supporting the plaintiff's claim).

Moreover, this error is not harmless where the vocational expert testified that no jobs existed that could accommodate an employee being off task more than fifteen percent of the workday. (Tr. 46). Further, the cursory treatment of Russell's IBS symptoms in the body of the ALJ's decision, (Tr. 18), was failed on at least three scores. First, for the most part, the record citations relied upon by the ALJ reflected

psychiatric behavioral health encounters rather than physical examinations. Thus, they shed only limited light on Russell's physical impairments. Second, this brief assessment failed to take into account the fact that Russell's symptoms fluctuated, a fact noted by her treating sources. Further, the ALJ's decision neglected to mention those instances in which treatment records recorded IBS fecal and urinary incontinence flare ups. Thus, the ALJ's summary factual recital was incomplete.

Simply put, more is needed here. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here where Russell's IBS was never identified at Step 2 and never fully evaluated by the ALJ. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

Finally, we note the particular challenges presented by Russell's status as a *pro se* litigant. It is evident from the ALJ hearing in this case that Russell was

occasionally overwhelmed by the intellectual and emotional demands of presenting her disability claim. (Tr. 34). In this setting, we are mindful that:

> An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. "When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' " Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir.1978)); Dobrowolsky, 606 F.2d at 407 (noting that an ALJ must "assume a more active role when the claimant is unrepresented"). See generally Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir.1995) ("ALJs have a duty to develop a full and fair record in social security cases.").

Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). On remand, we commend this principal to the Commissioner in the event that Russell continues to litigate this case without the benefit of counsel.

## IV.    **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: April  30, 2025